## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION AS RECEIVER FOR ) | |
| WHEATLAND BANK, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No.: 10-cv-4288 |
|         v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| LEWIS MARK SPANGLER, ET AL., ) | |
| ) | |
|     Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions to dismiss [60, 63], one filed by Defendant Mary Davolt and one filed by Defendants Lewis Mark Spangler, Arthur P. Sundry, Jr., Michael A. Sykes, Frank Maly, Dolores Ritter, Beverly Harvey, Michael Rees, Norman Beles, and Leonard Eichas.[1] For the reasons set forth below, the Court denies Defendant Mary Davolt's motion to dismiss [60] and grants in part and denies in part the motion to dismiss [63] filed by Defendants Lewis Mark Spangler, Arthur P. Sundry, Jr., Michael A. Sykes, Frank Maly, Dolores Ritter, Beverly Harvey, Michael Rees, Norman Beles, and Leonard Eichas.

## I.      Background[2]

### A.      Procedural History

---

[1] In addition to filing her own motion to dismiss, Defendant Mary Davolt also filed a motion [67] to adopt the motion to dismiss filed by the other Defendants, which the Court granted. Defendant Leonard Eichas [81] also was granted leave to adopt the other Defendants' motion to dismiss.

[2] For purposes of Defendants' motions, the Court assumes as true all well-pleaded allegations set forth in Plaintiff's amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

On April 23, 2010, the Illinois Department of Financial and Professional Regulation ("IDFPR") closed Wheatland bank in Naperville, Illinois, and appointed the FDIC as receiver. Pursuant to that appointment, the FDIC succeeded to all rights, titles, powers and privileges of Wheatland and the stockholders, depositors and other parties interested in the affairs of Wheatland. See 12 U.S.C. § 1821(d)(2)(A)(i) (2010). As receiver, the FDIC is charged with collecting monies owed to the institution and distributing the funds to the creditors of Wheatland. See 12 U.S.C. §§ 1821(d)(2)(B)(ii); 1821(d)(11). The FDIC is authorized by Congress to act as receiver to pursue claims against directors and officers of failed banks for alleged breaches of the applicable duty of care. See 12 USC § 1821(k).

In July 2010, after being substituted for Wheatland in two lawsuits pending in the Circuit Court of Cook County, the FDIC removed those cases to the Northern District of Illinois. The first suit was filed by Wheatland in December 2009 against Michael Sykes, Arthur Sundry, and others, alleging breach of fiduciary duty, tortious inducement of breach of fiduciary duty, fraud, negligence, conspiracy, and deceptive trade practices. The second suit was a shareholder derivative action filed by Michael Sykes in May 2010 against Mark Spangler and other former directors, asserting claims of breach of fiduciary duty, gross mismanagement, waste of corporate assets, and negligence. On May 5, 2011, Judge William T. Hart consolidated these cases, after substituting the FDIC as plaintiff in the *Sykes v. Spangler* matter, and granted the FDIC's leave to file an amended complaint. The FDIC filed its amended complaint, and Defendants' motions to dismiss followed.

### B.     Factual Background

The FDIC's amended complaint charges ten individuals with wrongdoing in relation to their work as former officers or directors (or both) of Wheatland Bank. Wheatland opened for

business on February 5, 2007 and on April 23, 2010, after three years in operation, the IDFPR closed the bank and appointed the FDIC as Receiver.  At the time of its failure, Wheatland had assets of $441.6 million. Its failure resulted in an estimated loss to the FDIC Deposit Insurance Fund of $136.9 million.  According to the amended complaint, despite early and repeated regulatory warnings of the bank's excessive growth, heavily concentrated loan portfolio, poor credit administration, and lax oversight, the directors and officers of Wheatland continued on a course of asset growth, increased concentrations of high-risk real estate loans, and uncorrected underwriting failures that would result in massive losses to the bank.

The amended complaint divides Defendants into several groups.  Plaintiff labels a group of eight Defendants as the "Directors Defendants" because they are alleged to have been on the bank's Board of Directors at certain points in time:  Chairman of the Board Lewis Mark Spangler, President and CEO Michael A. Sykes, director Arthur P. Sundry, Jr., director Frank Maly, Michael Rees, Mary Davolt, Norman Beles, and Beverly Harvey.  A subgroup of four of these Director Defendants (Rees, Davolt, Beles, and Harvey) are labeled as "Outside Directors." And lastly, Plaintiff labels a group of six Defendants as "Loan Committee Defendants" because they are alleged to have been on the bank's loan committee:  Spangler, Sykes, Sundry, Maly, Chief Lending Officer Leonard Eichas, and Chief Financial Officer Dolores Ritter.  Eichas and Ritter are the only defendants in the "Loan Committee" group that are not in the "Director" group.

Wheatland delegated the authority to approve loans to the Loan Committee. The Loan Committee was responsible for evaluating the adequacy of the underwriting of each loan and voting on whether to approve or reject the proposed loan.  Plaintiff alleges that Wheatland adopted an aggressive asset growth strategy that violated the business plan that it submitted and

committed to follow in order to obtain federal deposit insurance. After six months in operation, Wheatland had total assets at levels not projected in its business plan until the second quarter of its second year of operation. By the end of its second year of operation, Wheatland had extended $401 million in loans, approximately five times the loan limit approved by state and federal regulators. According to the amended complaint, this rapid loan growth compromised Wheatland's credit underwriting and administration, eventually leading to loan losses that substantially depleted its capital.

Wheatland's officers and directors concentrated the Bank's excessive lending in commercial real estate ("CRE") and acquisition, development, and construction ("ADC") loans. The amended complaint describes in detail eight specific "Loss Loans" made by Wheatland. See Am. Compl. at ¶¶ 25-29; 40-47; 112-115. According to the FDIC, Wheatland's percentage of high-risk real estate loans sharply exceeded that of its peers, prompting frequent warnings from bank examiners, which were ignored by Defendants. Specifically, Plaintiff alleges that Wheatland's officers and directors permitted the lending to concentrate in a few individuals, a majority of whom already held adversely classified credits with Wheatland. For example, the complaint alleges that as of December 31, 2008—roughly a year and a half after Wheatland's founding—ten individuals were obligated on loans that represented 97 percent of Wheatland's total capital and seven of these borrowers had credits that had been adversely classified by examiners. This focus on loan growth over risk diversification and asset quality resulted in large adverse classification levels, substantial charge-offs, and additional provisions to the allowance for loan and lease losses ("ALLL"), all of which significantly depleted Wheatland's capital.

The amended complaint also alleges that the Loan Committee Defendants failed to follow the bank's written lending policies and ensure prudent underwriting in approving the Loss Loans.

The Loan Committee allegedly approved loans without current and complete financial information on the borrower and guarantor and without obtaining a full guarantee on the loans. Other significant underwriting problems included failing to assess the repayment abilities of borrowers and guarantors, failing to assess creditworthiness before allowing generous interest reserves, and funding loans that were not financially feasible. Loans were made with excessive long-to-value ratios in violation of the bank's loan policies and federal regulatory standards, thereby heightening Wheatland's risk. The Loan Committee Defendants also allegedly approved loans where the collateral was impaired, no appraisals had been performed, and no title insurance was secured, and then failed to oversee loan draws. Furthermore, Wheatland extended loans to certain shareholders of Wheatland with preferential terms. When these loans failed, Plaintiff alleges that Wheatland chose not to pursue repayment from these borrowers and guarantors.

The amended complaint further alleges that these failings were compounded by the Director Defendants' failure to address repeated regulatory warnings about the state of Wheatland, beginning in 2007 through its collapse in April 2010. In the summer of 2007, state regulators urged the directors to monitor lending closely due to Wheatland's "*de novo* status, rapid loan growth, and the inherent risk associated with CRE and ADC lending." Am. Compl. at ¶ 33. Going forward, federal and state regulators cautioned Wheatland's Board to address its high CRE and ADC concentrations and excessive growth rate given the bank's *de novo* status and criticized Wheatland's inadequate credit underwriting and administration. According to the amended complaint, the Director Defendants took no action to reform the lending process. As a result, Wheatland further deteriorated and in December 2009 entered into a consent order with the FDIC and IDFPR which required Wheatland, among other things, to increase Board participation, reduce all loan concentrations, and revise and improve its lending policies. In the

February 2010 regulatory examination, the FDIC and IDFPR found that Wheatland's emphasis on loan growth over diversification and asset quality resulted in significant charge-offs that adversely affected its capital. The FDIC also issued a Prompt Corrective Action letter in February 2010, notifying the bank that it was "critically" undercapitalized and requiring it to submit a capital restoration plan by March 15, 2010. Am. Compl. at ¶ 39. It failed to do so and Wheatland closed soon thereafter, allegedly causing substantial losses to the FDIC Deposit Insurance Fund and creditors of the bank.

On the basis of these factual allegations, the amended complaint contends that in approving the Loss Loans, the Loan Committee Defendants (Spangler, Sundry, Sykes, Maly, Eichas and Ritter) were grossly negligent within the meaning of 12 U.S.C. §1821(k) (count I) and negligent under Illinois common law (count II) and that these same defendants breached their fiduciary duty of care in approving the eight "Loss Loans" (count III) and their fiduciary duty of loyalty in approving the seven "Insider Loss Loans" (count IV). The amended complaint also alleges that the Director Defendants (everyone except Eichas and Ritter) were grossly negligent (count V) and negligent (count VI) for failing "properly to supervise, manage and oversee the lending operations [or 'function'] and business affairs of the Bank."

## II.     Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Defendant relies on cases applying heightened pleading requirements, but those requirements are inapplicable here. Under Rule 8, a complaint "suffices if it notifies that defendant of the principal events." *Christensen v. County of Boone, IL*, 483 F.3d 454, 466 (7th Cir. 2007). It need not contain "all the facts that would be necessary to prevail." *Id.* Furthermore, the facts asserted in Plaintiff's memorandum filed in opposition to the motions to dismiss—but not contained in the complaint—are relevant to the extent that they can be proved consistent with the allegations in the complaint. See *Evans v. U.S. Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006).

## III.    Analysis

Defendants allege that Plaintiff's amended complaint fails to state a claim upon which relief can be granted. Specifically, Defendants maintain that the FDIC's allegations do not support a plausible inference that Defendants knew or should have known of any problems with the eight Loss Loans identified in the complaint, nor do the allegations demonstrate how any specific Defendant caused any of the alleged losses.

A.     **Applicable Standards**

Illinois law permits claims for both negligence and gross negligence against directors. See *FDIC v. Saphir*, 2011 WL 3876918, at *7 (N.D. Ill. Sept. 1, 2011). The elements of the FDIC's gross negligence, negligence and breach of fiduciary duty claims are similar.  In order to state valid claims, the FDIC must allege duty, breach, proximate cause, and damages.  *FDIC v. Gravee,* 966 F. Supp. 622, 636 (N.D. Ill. 1997) (gross negligence); *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 702 (7th Cir. 2009) (negligence); *DeGeer v. Gillis,* 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) (breach of fiduciary duty).  The standard of care applicable to Defendants in this case "is that which ordinarily prudent and diligent persons would exercise under similar circumstances." *FDIC v. Bierman,* 2 F.3d 1424, 1427 (7th Cir. 1993).  "This standard requires that the court review all of the circumstances of the particular case." *Id.*

Gross negligence has been defined as "very great negligence" but something less than willful, wanton and reckless conduct.  *Gravee*, 966 F. Supp. at 636.  The court in *Gravee* explicitly rejected a recklessness definition of gross negligence, concluding that a showing of "utter indifference" or "conscious disregard" was not required under Illinois law.  *Id.*  No allegations of lack of good faith or an intent to injure are required to sustain a claim of gross negligence under Illinois law.  *Id.* at 636-37.  Rather, the *Gravee* court held that "a reasonable jury could find for FDIC if it concludes that * * * (the bank's) ADC loan underwriting and monitoring practices were seriously deficient and that defendants repeatedly disregarded * * * (federal regulator's) warnings about those deficiencies." *Id.* at 640.[3]

---

[3]     Defendants, citing Delaware case law, maintain that a scienter requirement for director oversight liability exists.  See *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996). Defendants claim that Plaintiff must plead that the Director Defendants "knew they were not discharging their fiduciary duties or demonstrated a conscious disregard for their responsibilities such as by failing to act in the face of a known duty to act."  See Defs' Joint Memorandum at 15 (citing *In re Citigroup Inc. S'holders Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009)).  However, the court in *Gravee* specifically

**B.** **Claims for Gross Negligence, Negligence, and Breach of Fiduciary Duty Against Loan Committee Defendants for Approval of Loss Loans**

Counts I through III of the amended complaint allege claims for gross negligence, negligence, and breach of the fiduciary duty of care against the Loan Committee Defendants (Spangler, Sundry, Sykes, Eichas, Maly and Ritter) for their approval of imprudent loans. Defendants move to dismiss Counts I through III on the ground that the complaint is vague as to the role of each Loan Committee member. Defendants maintain that the "FDIC never specifies the loans that were made (or the losses that supposedly resulted) from these generally described problems. And it never ties the alleged losses to a specific director or loan committee member." Defs' Joint Memorandum at 16.

The amended complaint includes a table that lists which members of the Loan Committee personally approved each "Loss Loan" and the date of that approval. See Am. Compl. at ¶ 41. Then, for each loan, the amended complaint identifies the reasons why Plaintiff believes the approval of that loan was grossly negligent. See, *e.g.*, Am. Compl. at ¶¶ 51; 59; 66; 80; 87; 99. For example, the complaint alleges that Spangler, Sykes, Eichas, Sundry and Maly all approved a $3.62 million loan to Galewood Plaza II, LLC in December 2007. At the direction of these Defendants, Wheatland made this non-recourse, interest-only loan to refinance a failing strip mall and raw land. *Id.* at ¶ 57. The complaint further alleges that the loan was approved despite the presence of a *lis pendens* on the property that impaired Wheatland's security interest. *Id.* at ¶ 59. Notwithstanding the condition of the collateral, the Loan Committee Defendants approved the loan without ensuring that the borrower had the cash flow to repay the loan. Furthermore,

---

rejected such a "conscious disregard" standard for gross negligence claims against bank directors and noted that bad faith was not required to plead a breach of the duty of care. 966 F. Supp. at 636. Defendants have not cited any Illinois cases applying the *Caremark* or *Citigroup* standards for an Illinois corporation under Illinois law.

the loan allegedly was approved without obtaining current financial information from the borrower or the guarantor. The guarantor, a major shareholder of Wheatland, was only required to provide a 25 percent personal guaranty in violation of the Bank's written loan policies. *Id.* at ¶ 59. According to the allegations, the Galewood Plaza loan also constituted a violation of Wheatland's commitment to its regulators that the bank would limit total loans to the amount set forth in its business plan and exacerbated the already excessive concentration in CRE and ADC lending. *Id.* at ¶ 60. As a result of the Loan Committee Defendants' approval of this loan, the amended complaint alleges that Wheatland lost approximately $1.4 million. The amended complaint alleges this level of detail for each loan that the Loan Committee Defendants personally approved. See, *e.g.,* Am. Compl. at ¶¶ 51; 59; 66; 80; 87; 99.

Defendants contend that the complaint should discuss separately each Loan Committee Defendant. Plaintiff maintains that the level of specificity urged by Defendants is unnecessary, as the allegations are essentially the same for each of them. Plaintiff has alleged that each Loan Committee member received the same loan approval requests showing the absence of a sufficient guarantee or collateral for distressed or underperforming properties, the high LTV ratios in contravention of prudent underwriting standards, and the absence of adequate financial information regarding the borrowers and guarantors. Each Loan Committee Defendant allegedly was aware of the repeated regulatory criticisms of excessive growth, overconcentration of CRE and ADC loans, and credit administration problems. And finally, each Loan Committee Defendant was aware that Wheatland was a *de novo* institution and that regulators had repeatedly urged close monitoring of the bank's lending practices. Am. Compl. at ¶¶ 32-34. Based on the similarities between Defendants as set forth in the amended complaint, Plaintiff has sufficiently

alleged that by voting for the Loss Loans, all of the Loan Committee Defendants failed to exercise the requisite care to satisfy their fiduciary duties.

Defendants further argue that the allegations are a product of hindsight and they should not be held liable as insurers for losses resulting from a recession. However, at this juncture, accepting Plaintiff's assertions that Defendants ignored regulatory warnings against rapid growth and excessive concentration and failed to require sound underwriting procedures when approving the eight Loss Loans, it is not clear that Defendants' action can be chalked up to "a recession." While it is too early in the case to know whether the evidence will show that Defendants too were victims of the recession, the amended complaint does not attempt to hold the Loan Committee Defendants accountable for failing to foresee future economic developments. Instead, Plaintiff has alleged conduct on the part of Defendants sufficient to cast them as negligent in ignoring inadequate underwriting despite facts available at the time of approval, rather than as mere innocent bystanders.

The same holds true for Defendants' argument that Count III for breach of fiduciary duty of care improperly holds the Loan Committee Defendants to an "utmost care" standard when "reasonable care" should control. Defs' Joint Memorandum at 14. Regardless of whether the Loan Committee Defendants are held to an "utmost" or "reasonable care" standard, Defendants' alleged failures, as detailed above, took place in the face of notice that trouble was brewing with the bank's operations. Plaintiff has not set forth a scenario in which borderline judgment calls were made; rather, Plaintiff alleges a complete failure to ensure that safe and sound lending practices were followed to protect the bank and its depositors. See, *e.g., FDIC v. Gravee*, 966 F. Supp. at 640 (denying defendants' summary judgment motion on FDIC's gross negligence claim due to concentration in risky lending and failure to observe regulatory warnings.). The Seventh

Circuit has stated that attention greater than ordinary care is needed when directors and officers are on notice of trouble in a bank's operations. See *FDIC v. Bierman*, 2 F.3d at 1433 (holding that the degree of care must match the extent of the problems known to the officers and directors). Here, Plaintiff alleges that Defendants were warned of the potential pitfalls for new banks. As a newly opened bank, Wheatland was susceptible to unsafe lending and credit administration practices and Plaintiff alleges that regulators quickly and frequently warned the bank to closely monitor the risks. According to the amended complaint, Wheatland's Loan Committee nonetheless ignored the bank's business plan, upon which they secured deposit insurance, and rapidly increased ADC and CRE loans in a short period of time. Regulators warned Defendants to reform the bank's underwriting practices to address these excessive risks, but risky loans were still being approved as late as 2009.

Defendants also state that the allegations in the amended complaint are "nothing but vague assertions that officers and directors did not conform to a loan policy or get a personal guarantee," and therefore do not rise to the level of gross negligence. Defs' Joint Memorandum at 24. However, courts in this district have held that comparable allegations state a claim for gross negligence. See, *e.g.*, *RTC v. Franz*, 909 F. Supp. 1128 (N.D. Ill. 1995) (refusing to dismiss a claim for gross negligence alleging that defendants embarked on "out-of-state participation loans for" real estate development without establishing proper underwriting controls); *RTC v. O'Connell*, 1996 WL 153866, at *3 (N.D. Ill. Apr. 1, 1996) (denying motion to dismiss gross negligence claim against bank directors for failure to take corrective action to respond to lending problems and failing to institute proper internal controls to make prudent loans); *RTC v. Fortunato*, 1994 WL 478616, at *3-4 (N.D. Ill. Sept. 1, 1994) (denying motion to dismiss gross negligence claim against officers and directors for failure to properly supervise and

for disregarding federal directives). Defendants rely on a corporate derivative case applying a heightened fact pleading standard pursuant to Federal Rule of Civil Procedure 23.1 as well as a summary judgment opinion that does not address pleading standards for gross negligence. See *In re ITT Corp. Derivative Litig.*, 588 F. Supp. 2d 502, 510-511 (S.D.N.Y. 2008) (unlike Rule 8, Rule 23.1 requires specific factual allegations to show demand was futile); *RTC v. Acton*, 844 F. Supp. 307, 312 (N.D. Tex. 1994) (ruling on summary judgment motion). However, the allegations against the Loan Committee Defendants found in the complaint need only satisfy Rule 8, and they do. That standard requires only that Defendants be notified of the claims against them and the plausible grounds on which those claims rest. See *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Defendants challenge the FDIC's conclusion that their actions were negligent (grossly or otherwise) or constituted a breach of fiduciary duty, but they cannot plausibly suggest that they do not understand the allegations against them.

The amended complaint sets forth each Defendant's position and tenure at Wheatland, the loans that each Defendant personally approved, the reasons why those loans were imprudent at the time of approval, and the loss suffered by Wheatland from the decision to make the loan. In sum, allegations as to the Loan Committee Defendants' repeated approval of risky loans without obtaining sufficient personal guarantees to protect Wheatland, without investigating the borrowers or guarantors' financial condition and ability to repay the loans, and without ensuring the basic underwriting required by the Bank's loan policy, are sufficient to state claims for negligence, gross negligence, and breach found in Counts I through III.

**C.      Claims for Gross Negligence and Negligence Against Director Defendants**

Counts V and VI allege that the Director Defendants were negligence (grossly or otherwise) in their oversight of Wheatland's lending practices. According to Plaintiff, the

Director Defendants were placed on notice as early as 2007 by regulatory reports, as well as through the bank's own monthly loan reports reflecting loan concentrations, liquidity analyses and ALLL data, that Wheatland was overconcentrated in speculative real estate construction loans with numerous risky loans to the same borrowers.  Plaintiff alleges that despite being urged to closely monitor loan concentration due to the bank's *de novo* status, rapid loan growth and the inherent risk associated with CRE and ADC lending, the Director Defendants ignored these warnings and took no remedial action to reform the underwriting and lending practices at Wheatland.  Rather, they allegedly permitted management to continue to violate the approved business plan, loan policies, and federal regulations, allowing the continuation of risky lending operations and losses of tens of millions of dollars.

Defendants raise three primary objections to Counts V and VI.  First, Defendants assert that the amended complaint does not adequately distinguish between outside and inside directors.  Second, Defendants contend that repeated warnings to the directors of out-of-control lending practices were not sufficiently specific or dire to state an action.  Finally, Defendants contend that they reasonably relied on officers, consultants, and other professionals so they cannot be held liable.

Defendants argue that the complaint does not separately plead claims against inside and outside directors, but, as with the Loan Committee Defendants, Plaintiff alleges that all of the Director Defendants were on notice of Wheatland's risky and imprudent lending practices, and all failed to take any remedial action.  With respect to Spangler (Chairman of the Board and Loan Committee member), Sykes (President, CEO, and Loan Committee member), Sundry (Loan Committee member) and Maly (Loan Committee member)—all members of the Loan Committee—Plaintiff certainly has alleged familiarity with Wheatland's lending activities.  With

respect to the fiduciary duties of Rees, Davolt, Beles, and Harvey (referred to as the "Outside Directors" in the amended complaint), the complaint alleges that they too were charged with overseeing the operations of the bank. The case law comports with this view of director responsibility. In *Bierman*, the Seventh Circuit noted that "[d]irectors are charged with keeping abreast of the bank's business and exercising reasonable supervision and control over the activities of the bank." See *Bierman*, 2 F.3d at 1433. (holding absentee directors with no knowledge of transaction still liable for failure to address risky practices). "The fact that an absentee director had no knowledge of the transaction and did not participate in it does not absolve him of liability." *Id.* (stating that "[f]ew distinctions have been drawn between the duties of inside and outside directors" and holding outside directors "shared responsibility with the insiders for the improvident loans" because they were on notice of the bank's problems).

In this case, Plaintiff alleges that all of the inside and outside directors received monthly credit reports showing that Wheatland rapidly overshot its asset and loan plans soon after its inception and that all of the directors received regulatory reports from the IDFPR and the FDIC warning about the bank's "excessive growth rate, high concentration of risky CRE and ADC loans, violations of LTV ratio guidelines, and poor earnings." Am. Compl. at ¶ 115. Furthermore, the Board of Directors and senior officers all met with federal regulators in early 2008 to discuss the previously identified concerns. The amended complaint identifies the specific warnings provided in those reports. Within six months of Wheatland's opening, the state examiners warned the directors that, as of June 30, 2007, CRE lending represented the largest share of the bank's loans, with a concentration exceeding 200 percent of total capital. The report warned that Wheatland's high concentration of these loans and the inherent associated risks required close monitoring of lending practices by the directors, particularly because the

bank was new and did not have a seasoned loan portfolio. The report also warned of excessive asset growth, poor earnings, and failure to document exceptions to bank lending policies.[4] The amended complaint alleges that throughout 2008 and 2009, regulators continued to warn Wheatland's directors and officers regarding the risks posed from their "underwriting and credit administration deficiencies, loan policy violations and continued excessive growth rate." Am. Compl. at ¶ 34. These allegations are sufficient to demonstrate that all of the directors were on notice of the Wheatland's unsustainable and risky lending practices, or, at a minimum, should have been aware. The amended complaint adequately pleads gross negligence and negligence by each of the Director Defendants.

### D. Breach of Duty of Loyalty by Loan Committee Defendants

Defendants maintain that a claim for breach of the duty of loyalty can only be maintained when the wrongdoer personally benefits from his conduct. In support of their assertion, Defendants principally cite Delaware law. However, Illinois law permits a claim for breach of the duty of loyalty when it hinders the entity's continued operations, even if the wrongdoer does not derive a personal benefit. See, *e.g., Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 415 n.14 (N.D. Ill. 2001) (noting that in Illinois, "[c]orporate officers owe a fiduciary duty of loyalty to their corporate employer not to actively exploit their positions within the corporation for their own personal benefit or hinder the ability of a corporation to continue the business for which it was developed"); see also *Velo Corp. v. Babcock*, 611 N.E.2d 1054,

---

[4] In her separate motion to dismiss, Defendant Davolt claims that the FDIC has not sufficiently alleged that she received notice of or reviewed any communications from the regulators. But the reports of examination are issued to the Board by regulators. Davolt has not denied that she was a member of the Board or that she attended the April 2008 meeting with federal regulators. Also, Davolt's suggestion that she might never have read the regulator's reports highlighting material problems at Wheatland does not mean that she cannot be held liable for gross negligence. See, *e.g.*, *Atherton v. Anderson*, 99 F.2d 883, 891 (6th Cir. 1938) (failure to read reports does not insulate director from liability.); *FDIC v. Brickner*, 747 F.2d 1198, 1202 (8th Cir. 1984) (bank directors could not ignore bank examiner warnings).

1059 (Ill. App. Ct. 1993) (same). Illinois courts have found breaches of the duty of loyalty when directors approved preferred loans to shareholders, even when they did not personally profit. See *Romanik v. Lurie Home Supply Ctr., Inc.*, 435 N.E.2d 712, 722-23 (Ill. App. Ct. 1982) (affirming finding of breach of fiduciary duty against directors that approved below market rate on notes with inadequate security for benefit of majority shareholder); see also *Maercker Point Villas Condo. Assoc. v. Szymski*, 655 N.E.2d 1192, 1194-95 (Ill. App. Ct. 1995) (affirming breach of duty of loyalty for hindering corporation's continued operation).

Here, Plaintiff alleges that the Loan Committee Defendants gave preferential loans to Wheatland shareholders on terms and conditions contrary to the best interests of Wheatland. According to the amended complaint, seven of the Loss Loans (dubbed "Insider Loans") were made to favored shareholders and borrowers who were not creditworthy or were in financial difficulty. The complaint further alleges that the committee approved loans for projects that were not financially feasible, and, notwithstanding the borrowers' deficiencies, approved these loans with partial or no guarantees, with LTV ratios in excess of federal guidelines and Wheatland's loan policy, and without obtaining an appraisal or adequate collateral. According to Plaintiff, not only could no outside borrower have received those terms, but the Loan Committee Defendants also failed to pursue the favored borrowers after they defaulted on these loans and even granted continuing concessions at the further expense of the bank's interests. Defendants' actions in approving these loans allegedly depleted Wheatland's capital and contributed to the bank's closure after only three years in business. These allegations adequately state a claim for breach of the duty of loyalty against the Loan Committee Defendants.

### D. Business Judgment Rule

Defendants contend at various times in their briefs that Plaintiff's claims fail as a matter of law because they are barred by the Illinois "business judgment" rule. The rule "applies to protect directors who have performed diligently and carefully and have not acted fraudulently, illegally, or otherwise in bad faith." *Treco, Inc. v. Land of Lincoln Sav. and Loan,* 749 F.2d 374, 377 (7th Cir. 1984). Under this rule, "corporate directors, acting without corrupt motive and in good faith, will not be held liable for honest errors or mistakes of judgment, and a complaining shareholder's judgment shall not be substituted for that of the directors." *Id.* (quoting *Lower v. Lanark Mut. Fire Ins. Co.,* 448 N.E.2d 940, 944 (Ill. App. Ct. 1983)). The rule does not shield "directors who fail to exercise due care in their management of the corporation." See *Stamp v. Touche Ross & Co.*, 636 N.E.2d 616, 621 (Ill. App. Ct. 1st Dist. 1993). It has "no role where directors have either abdicated their functions, or absent a conscious decision, failed to act." *Silver v. Allard,* 16 F. Supp. 2d 966, 970 (N.D. Ill. 1998) (internal quotation marks and citation omitted).

Although the Seventh Circuit has stated that "[t]he business judgment rule is a *defense*" (*Alliant Energy Corp. v. Bie,* 277 F.3d 916, 918 (7th Cir. 2002) (emphasis in original)), Illinois courts have repeatedly clarified that "the business judgment rule is a presumption" that arises by operation of law. *Ferris Elevator Co., Inc. v. Neffco, Inc.*, 674 N.E.2d 449, 453 (Ill. App. Ct. 3d Dist. 1996) (citing *Diederich v. Walters,* 357 N.E.2d 1128 (1976)); see also *Talton v. Unisource Network Services, Inc.*, 2004 WL 2191605, at *14 (N.D. Ill. Sept. 27, 2004). Thus, while in essence it is a defense, under Illinois law, it does not appear to be an *affirmative defense* that cannot be raised in response to a motion to dismiss. Rather, it "is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest

belief that the course taken was in the best interest of the corporation." *Ferris Elevator Co., Inc.,* 674 N.E.2d at 552; see also *Talton,* 2004 WL 2191605 at *14. Thus, at the motion to dismiss phase, it stands to reason that the burden of proof is on the party challenging a corporate decision made by a director to present allegations that rebut the presumption created by the business judgment rule. See *In re II. King & Assoc.,* 295 B.R. 246, 275 (Bankr. N.D. Ill. 2003) (citing *Ferris,* 674 N.E.2d at 453). The presumption may be rebutted by allegations that a director "acted fraudulently, illegally, or without becoming sufficiently informed to make an independent business decision." *Ferris,* 674 N.E.2d at 452 (citing *Smith v. Van Gorkom,* 488 A.2d 858 (Del. 1985)).

It is a "prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties. If directors fail to exercise due care, then they may not use the business judgment rule as a shield to their conduct." *Davis v. Dyson*, 900 N.E.2d 698, 714 (Ill. App. Ct. 2008). As previously set forth, the amended complaint sufficiently pleads an absence of care (or a breach of the duty of care) on the part of Defendants. According to Defendants, Wheatland's officers and directors disregarded regulatory warnings of unsafe lending practices and monthly reports reflecting dangerous loan concentration and excessive growth, failed to follow the bank's business plans and loan policies, and took no action to reform underwriting practices in response to criticism. These allegations, when viewed in the light most favorable to Plaintiff, could support a finding that Defendants breached their duty of care. Furthermore, the allegations can be distinguished from those in *Stamp* (a case cited by Defendants): Plaintiff is not merely alleging that Defendants misjudged the proper safeguards to be taken (as was the case in *Stamp*), but that Defendants failed to obtain the necessary information to make rational business decisions regarding those safeguards. *Cf. Stamp*, 636

N.E.2d at 622-24 (granting leave to amend to plead claim overcoming business judgment rule and noting that "[n]owhere in the complaint does plaintiff allege that defendants did not make informed judgments or use due care in arriving at those judgments."). At this juncture, Defendants' alleged failure to exercise due care cannot be excused by the business judgment rule.

### F. Illinois Banking Act

Defendants also allege that the Illinois Banking Act shields them from Plaintiff's claims. In certain circumstances, the Illinois Banking Act allows shareholders, by a two-thirds majority vote, to limit their directors' personal liability for monetary damages for a breach of fiduciary duty. 205 ILCS § 5/39(b) (2000). Section 5/39(b) contains exceptions to shareholders' ability to limit a director's exposure. 205 ILCS §§ 5/39(b)(1-5). A director may not be insulated against "an act or omission that is grossly negligent" (§ 5/39(b)(1)), "a breach of the duty of loyalty to the bank or its shareholders" (§ 5/39(b)(2)), intentional or knowing misconduct (§ 5/39(b)(3)), or "a transaction from which the director derived an improper personal benefit" (§ 5/39(b)(4)). Similarly, shareholders may not limit a director's liability for acts occurring before the effective date of the limiting provision. (§ 5/39(b)(5)). Counts I and V (gross negligence) and Count IV (breach of the duty of loyalty) fall into the categories of claims against which shareholders may not shield a director. See §§ 5/39(b)(1) & (2). Thus, the Illinois Banking Act exemption does not impact those three counts. As to the remainder of the claims, Defendants' attempt to introduce documents purporting to show that the Illinois Banking Act shields Defendants from liability is premature. Those documents, and Defendants' arguments concerning those documents, are inconclusive at this stage and also not properly considered on a motion to dismiss. See, *e.g.*, *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002) (matters outside the

pleadings cannot be considered on a Rule 12(b)(6) motion without conversion to summary judgment).

### G.      Duplicative Counts

Defendants contend that the FDIC's breach of fiduciary duty of care claim (Count III) is duplicative of its negligent approval of imprudent loans claim (Count II).  Defendants are correct that courts have the authority to dismiss duplicative claims if they allege the same facts and the same injury.  *Beringer v. Standard Parking O'Hare Joint Venture,* 2008 WL 4890501, at *5 (N.D. Ill. Nov. 12, 2008).  Although the FDIC generally argues that its "fiduciary duty of care claim * * * is not duplicative of its negligent approval" claim, the FDIC does not dispute that its negligence claim and breach of fiduciary duty claim allege the same set of operative facts and injury.  Indeed, the two counts are almost identical.  Instead, the FDIC contends that it was free to plead duplicative claims in the alternative under Rule 8(d)(2). Rule 8(d)(2) does permit alternative pleading, but requires the plaintiff to "use a formulation from which it can be reasonably inferred that" the plaintiff is indeed pleading in the alternative. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011) (quoting *Holman v. Indiana,* 211 F.3d 399, 407 (7th Cir. 2000)).  Because the FDIC's complaint does not include any indication that the negligence and breach of fiduciary duty claims found in Counts II and III are alternative theories, nor has the FDIC even attempted to demonstrate that the claims are distinct, the Court dismisses Count III (breach of fiduciary duty) without prejudice.  The Court gives Plaintiff 21 days from the date of this order to replead if it wishes to include both claims in the alternative, or if it believes that it can distinguish between the two claims in its pleading.

## IV.    Conclusion

For the reasons set forth above, the Court denies Defendant Mary Davolt's motion to dismiss [60] and grants in part and denies in part the motion to dismiss [63] filed by Defendants Lewis Mark Spangler, Arthur P. Sundry, Jr., Michael A. Sykes, Frank Maly, Dolores Ritter, Beverly Harvey, Michael Rees, Norman Beles, and Leonard Eichas.  The Court dismisses Count III as duplicative of Count II, but denies Defendants' motion to dismiss as to the remaining counts.  The Court gives Plaintiff 21 days from the date of this order to replead if it wishes to include both Counts II and III in the alternative, or if it believes that it can distinguish between the two claims in its pleading.

Dated: December 22, 2011                        _____

                                                Robert M. Dow, Jr.
                                                United States District Judge