**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION AS RECEIVER FOR ) <br> WHEATLAND BANK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEWIS MARK SPANGLER, ET AL., ) <br> ) <br> Defendants. ) | Case No.: 10-cv-4288 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion to strike certain affirmative defenses [132]. For the reasons set forth below, the Court denies in part and grants in part Plaintiff's motion to strike [132].

**I.    Background**

On April 23, 2010, the Illinois Department of Financial and Professional Regulation ("IDFPR") closed Wheatland Bank in Naperville, Illinois, and appointed the FDIC as receiver. Pursuant to that appointment, the FDIC succeeded to all rights, titles, powers and privileges of Wheatland and the stockholders, depositors and other parties interested in the affairs of Wheatland. See 12 U.S.C. § 1821(d)(2)(A)(i) (2010). As receiver, the FDIC is charged with collecting monies owed to the institution and distributing the funds to the creditors of Wheatland. See 12 U.S.C. §§ 1821(d)(2)(B)(ii); 1821(d)(11). The FDIC is authorized by Congress to act as receiver to pursue claims against directors and officers of failed banks for alleged breaches of the applicable duty of care. See 12 USC § 1821(k).

In July 2010, after being substituted for Wheatland in two lawsuits pending in the Circuit Court of Cook County, the FDIC removed those cases to the Northern District of Illinois. The

first suit was filed by Wheatland in December 2009 against Michael Sykes, Arthur Sundry, and others, alleging breach of fiduciary duty, tortious inducement of breach of fiduciary duty, fraud, negligence, conspiracy, and deceptive trade practices. The second suit was a shareholder derivative action filed by Michael Sykes in May 2010 against Mark Spangler and other former directors, asserting claims of breach of fiduciary duty, gross mismanagement, waste of corporate assets, and negligence. On May 5, 2011, Judge Hart consolidated these cases, after substituting the FDIC as plaintiff in the *Sykes v. Spangler* matter, and granted the FDIC's motion for leave to file an amended complaint. After the case was transferred to this Court's docket, the FDIC filed its amended complaint and Defendants' motions to dismiss followed. The Court denied Defendant Mary Davolt's motion to dismiss and granted in part and denied in part the motion to dismiss filed by Defendants Lewis Mark Spangler, Arthur P. Sundry, Jr., Michael A. Sykes, Frank Maly, Dolores Ritter, Beverly Harvey, Michael Rees, Norman Beles, and Leonard Eichas. These Defendants, excluding Beverly Harvey, then answered Plaintiffs' complaint and raised twenty-one affirmative defenses. Plaintiffs moved to strike Defendants' affirmative defenses, and Defendants filed their first amended affirmative defenses to the second amended complaint, asserting eight affirmative defenses.[1] Plaintiff then filed the instant motion, challenging several of the remaining affirmative defenses.

## II. Analysis

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses are generally disfavored but may be used to expedite a case by

---

[1] Defendants Beverly Harvey and Mary Davolt initially filed separate answers and affirmative defenses, but have been included in Defendants' first amended affirmative defenses.

"remov[ing] unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Man Roland, Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 578 (N.D. Ill 1999); *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp 1224, 1228 (N.D. Ill 1996). Affirmative defenses will be stricken only when they are facially insufficient; therefore it would be inappropriate to strike an affirmative defense where the issues are complex. See *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 (7th Cir. 1975). However, affirmative defenses are pleadings and, as such, remain subject to the pleading requirements of the Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294 (citing *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736-37 (N.D. Ill 1982)). That being said, a defendant's pleading will be construed liberally.

**B.** **Affirmative Defenses**

*1. Affirmative defenses 4 and 5*

Defendants have alleged that Plaintiff is comparatively negligent (affirmative defense 5) and that Plaintiff's claims are barred because it failed to mitigate the damages (affirmative defense 4). Essentially, Plaintiff's argument rests on the premise that it has no duty to Defendants as a matter of federal common law. In support of its position, Plaintiff relies heavily on the Seventh Circuit's decision in *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir. 1993). In turn, Defendants contend that the FDIC failed to cite a United States Supreme Court decision which "substantially, if not completely," undermined the holding and rationale of *Bierman*. See *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994). Indeed, Plaintiff's opening brief failed to acknowledge the decision in *O'Melveny*, a troubling exclusion given its obvious relevance to this issue. See *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 93 F. Supp. 2d 300, 304-

3

06 (W.D.N.Y. 2000) ("Both parties agree that *O'Melveny* represents important precedent in this case.").

Before the Supreme Court's decision in *O'Melveny & Myers v. FDIC,* 512 U.S. 79 (1994), there was an emerging consensus in the circuit courts of appeals—including the Seventh Circuit—that, as a matter of federal common law, affirmative defenses alleging (for instance) a failure to mitigate damages could not be raised against the FDIC. This conclusion, called the "no duty rule," rested on the premise that the FDIC owed no duty to officers and directors when acting as receiver of a failed financial institution. See *FDIC v. Bierman,* 2 F.3d 1424, 1438 (7th Cir. 1993) ("[N]othing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendants' wrongdoing in the first instance."). In *Bierman*, the Seventh Circuit concluded that the FDIC must be allowed to fulfill its statutory mandate of replenishing the insurance fund and "maintain[ing] confidence" in the banking system without the fear of judicial second-guessing. See *id.* at 1439. The court also found support for its conclusion by analogizing to the discretionary function exception to the Federal Tort Claims Act (FTCA). See *id.* at 1441; see also *United States v. Gaubert,* 499 U.S. 315, 334 (1991) (holding that the discretionary function exception of the FTCA shielded United States from tort liability for allegedly negligent actions taken by banking regulators). The Fifth Circuit followed *Bierman* and extended its holding by preventing a defendant from arguing that losses incurred by the failed bank were causally

attributable to the FDIC's poor management of its assets after taking it over. See *FDIC v. Mijalis,* 15 F.3d 1314, 1323–24 (5th Cir. 1994).[2]

Several courts have concluded that the no duty rule was undermined by the Supreme Court's decision in *O'Melveny & Myers*, and Defendants urge the Court to follow suit. In *O'Melveny*, the FDIC, as receiver for American Diversified Savings Bank ("ADSB"), brought a lawsuit against the law firm of O'Melveny & Myers, which had represented ADSB in two real estate transactions. See *O'Melveny,* 512 U.S. at 81. The FDIC contended that O'Melveny & Myers had been negligent and breached its fiduciary duty in connection with its representation of ADSB. The law firm argued that the knowledge of ADSB's controlling officers (about their fraudulent conduct) was imputed to ADSB; that the same knowledge was therefore imputed to the FDIC, which as receiver stood in the shoes of ADSB; and that the FDIC was therefore estopped from pursuing its claim against O'Melveny & Myers. See *id.* In response, the FDIC argued that California law was not relevant to the question, which presented a matter of federal common law. Justice Scalia, writing for a unanimous Court, framed the issue to be decided as follows: "[W]hether, in a suit by the Federal Deposit Insurance Corporation * * * as receiver of a federally insured bank, it is a federal-law or rather a state-law rule of decision that governs the tort liability of attorneys who provided services to the bank." *Id.* at 80–81.

The Court first held that in actions brought by the FDIC as receiver, state common law governed tort liability—including the affirmative defenses of estoppel and imputation. Noting the general rule that "'[t]here is no federal general common law,'" the Court observed that "the remote possibility that corporations may go into federal receivership is no conceivable basis for

---

[2] The Tenth Circuit also adopted *Bierman*. See *FDIC v. Oldenburg,* 38 F.3d 1119, 1121 (10th Cir. 1994). Although issued four months after the Supreme Court's opinion in *O'Melveny, Oldenburg* did not cite the case or discuss its possible relevance.

5

adopting a special federal common-law rule divesting States of the authority over the entire law of imputation." *Id.* (quoting *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). The Court then turned to what it deemed the more "substantial" question presented: application of the law to the FDIC when suing as a receiver. See *id.* at 85.

The Court rejected the FDIC's contention that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub L. 101–73, 103 Stat. 183, evinced a "high federal interest" in the receivership of failed financial institutions and therefore "confirms the courts' authority to promulgate" federal common law. *O'Melveny,* 512 U.S. at 86. Citing the principle of *inclusio unius, exclusio alterius,* the Court said that this argument was "demolished" by the fact that FIRREA included a number of specific provisions regarding claims by, and defenses against, the FDIC as receiver, but none on imputation. See *id.* at 85–87 ("[W]e [will not] adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law."). The Court concluded that to "create additional 'federal common-law' exceptions is not to 'supplement this scheme, but to alter it." *Id.* at 87.

The Court was unwilling to rest its decision entirely on FIRREA because that statute was enacted in 1989, while the FDIC became receiver of ADSB in 1986. See *id.* at 87. However, the Court concluded that it would reach the same result even if FIRREA were not part of the case, noting that common-law making by a federal court is appropriate only when "there is a 'significant conflict between some federal policy or interest and the use of state law.'" *Id.* (quoting *Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68 (1966)). In reaching that conclusion, the Court rejected the FDIC's contention that adoption of California law on this

6

question would drain money from the FDIC insurance fund. Terming this a "more money" argument, the Court noted that "there is no federal policy that [the FDIC] should always win." *Id*. The Court also rejected the fund's argument that it would "'disserve the federal program' to permit California to insulate 'the attorney's or accountant's malpractice,' thereby imposing costs 'on the nation's taxpayers, rather than on the negligent wrongdoer.'" The Court concluded that "this is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted." *Id.* at 89.

There is a significant split among the district courts as to whether *O'Melveny* abrogates the no duty rule. Compare, *e.g., Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 93 F. Supp. 2d 300 (W.D.N.Y. 2000) (no duty rule abrogated), *FDIC v. Ornstein*, 73 F. Supp. 2d 277, 281-85 (E.D.N.Y. 1999) (same), *FDIC v. Gladstone,* 44 F. Supp. 2d 81, 86–88 (D. Mass. 1999) (same), *RTC v. Liebert,* 871 F. Supp. 370, 371–73 (C.D. Cal. 1994) (same), with *FDIC v. Healey,* 991 F. Supp. 53, 59–62 (D. Conn. 1998) (no duty rule survives), *RTC v. Bright,* 157 F.R.D. 397, 400 (N.D. Tex. 1994) (same), and *Resolution Trust Corp. v. Sands,* 863 F. Supp. 365, 370 (N.D. Tex. 1994) (same). As mentioned previously, the only circuit court to consider the no duty rule after *O'Melveny* was the Tenth Circuit in *FDIC v. Oldenburg,* 38 F.3d 1119, 1121 (10th Cir. 1994), which followed *Bierman* and adopted the rule, but did not cite or discuss *O'Melveny.*

To the extent that *O'Melveny* governs the question presented by the motion to strike, only the first part of *O'Melveny* applies because FIRREA governs this case. See *Liebert,* 871 F. Supp. at 371. The FDIC relies heavily on the second part of *O'Melveny,* where the Court stated that the power to fashion federal rules of decision is "limited to situations where there is a 'significant conflict between some federal policy or interest and the use of state law.'" *O'Melveny,* 512 U.S.

at 87 (quoting *Wallis,* 384 U.S. at 68).  Specifically, the FDIC argues that permitting the defenses in question would create a significant conflict with the important federal interest in maintaining the FDIC's discretionary authority.  But that argument fails in light of *O'Melveny's* obvious disdain for courts fashioning federal common law in this area.  The Supreme Court pointed out that Congress has stepped into this arena with a comprehensive statutory scheme, leaving the judicial branch to construe FIRREA, not fashion a federal rule in the absence of statutory guidance.  See *Liebert,* 871 F. Supp. at 372.  According to the Supreme Court, once Congress has imposed a comprehensive framework like FIRREA, it is presumed to have considered and adequately protected such federal interests, and interstitial federal common law making is impermissible.  See *O'Melveny,* 512 U.S. at 85 ("[M]atters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law."); *Liebert,* 871 F. Supp. at 372-73 ("What Congress chose to put in is to be enforced, and what it left out is not to be added by judicial fiat."); see also *FDIC v. Schreiner,* 892 F. Supp. 848, 857 (W.D. Tex. 1995) ("Any reliance on the quoted sentence from the second part of *O'Melveny,* which analyzed the application of federal common law in the absence of FIRREA, to construe the first part of *O'Melveny,* which analyzed the application of federal common law in post-FIRREA suits, is wholly misplaced.").[3]

The Supreme Court's decision in *O'Melveny* clearly calls into question the continued vitality of the Seventh Circuit's decision in *Bierman*.  However, O'Melveny does not directly

---

[3] As pointed out by the Supreme Court, FIRREA includes a number of tailored rules to be applied in suits by federal receivers, yet it does not include a provision barring the affirmative defense of failure to mitigate damages.  See, *e.g.*, *O'Melveny*, 512 U.S. at 86 (citing 12 U.S.C. § 1821(d)(14) (1988 ed., Supp. IV) (extending statute of limitations beyond period that might exist under state law); §§ 1821(e)(1), (3) (precluding state-law claims against the FDIC under certain contracts it is authorized to repudiate); § 1821(k) (permitting claims against directors and officers for gross negligence, regardless of whether state law would require greater culpability); § 1821(d)(9) (excluding certain state-law claims against FDIC based on oral agreements by the S & L)).

8

address the issue presented in Plaintiff's motion to strike. Given this conundrum, the Court is mindful that "[o]rdinarily a lower court has no authority to reject a doctrine developed by a higher one." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (citing *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535 (1983) (per curiam)). Only in limited circumstances may district courts depart from Seventh Circuit precedent—namely, when the district court is "powerfully convinced" that the Seventh Circuit would overrule its previous decision at the first opportunity. *Colby v. J.C. Penny Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987); *Olson*, 806 F.2d at 734 ("If * * * events subsequent to the last decision by the higher court approving the doctrine—especially later decisions by that court, or statutory changes—make it almost certain that the higher court would repudiate the doctrine if given a chance to do so, the lower court is not required to adhere to the doctrine."); see also *Lewis v. Gaylor, Inc.*, 2012 WL 4357861, at *1 (S.D. Ind. July 20, 2012).

The fact that the FDIC's motion relies so fundamentally on the questionable continuing viability of a "no duty" rule based on federal common law gives the Court serious concerns in granting a motion to strike at the pleadings stage. See *FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 390 (E.D.N.Y. 1997) (denying motion to strike affirmative defenses because "the legal issue of whether the 'no duty' rule survives *O'Melveny* is complex and disputed"); see also *Atkins v. Pickard*, 298 Fed. App'x. 512, 513 (7th Cir. 2008) (reversing grant of motion to strike affirmative defense of qualified immunity as Rule 12(f) "is not a good fit for resolving issues like qualified immunity which often turn on facts yet to be developed"). At this stage, the motion to strike raises substantial question of law. Even if the law does not evolve during the discovery period in this case, factual development of the record may assist the Court in resolving the tension between *Bierman* and *O'Melveny*. See *United States v. 416.81 Acres of Land*, 514 F.2d

9

627, 630 (7th Cir. 1975); *Culbert v. Hilti, Inc.*, 2010 WL 3855233, at*1 (N.D. Ill. 2010) ("When presented with a motion to strike a defense as insufficient, a court must examine whether the challenged defenses raise substantial questions of law or fact. If they do, the motion is not meritorious.") (internal citation omitted). With the limited record before the Court—consisting of allegations but no factual development—and in light of *O'Melveny* and its progeny, the Court cannot conclude "to a certainty" that the FDIC would "succeed despite any state of the facts which could be proved in support of the defense." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (internal quotation omitted). Rather, the foregoing discussion suggests that the viability of affirmative defenses such as comparative negligence and failure to mitigate is a complex issue with no clear answer and thus is not appropriate for disposition at the pleading stage. See also *AEL Fin. LLC v. Tri–City Auto Salvage, Inc.*, 2009 WL 3011211, at *9 (N.D. Ill. Aug. 31, 2009).[4]

    2.    *Affirmative Defense 3*

The FDIC also contends that Defendants' affirmative defense no. 3 (equitable estoppel) should be stricken. In their third affirmative defense, Defendants assert that, in the event that they failed to properly execute a shareholder exemption under the Illinois Banking Act, they should nonetheless receive equitable protection because they acted in reliance on an exemption for their own negligence as Bank directors. The FDIC maintains that the equitable estoppel defense cannot be asserted against claims of the FDIC-Receiver and that any such defense is permitted against the government only in very narrow circumstances—specifically, where there

---

[4] By failing to address *O'Melveny* in its opening brief, the FDIC skewed the presentation of arguments and authorities, leaving Defendants without the ability to know, much less rebut the FDIC's position on *O'Melveny*. While the FDIC would have had the last word in its reply brief, had the FDIC addressed *O'Melveny* when it should have, Defendants would have had the opportunity to address the FDIC's position on *O'Melveny*; by failing to raise it, Defendants had to front the issue and have not had the opportunity to address the FDIC's position. This serves as an additional justification for denying the FDIC's motion to strike.

is a showing of affirmative misconduct on the part of the government (in addition to the traditional elements of estoppel). See *Portmann v. U.S.*, 674 F.2d 1155, 1167 (7th Cir. 1982). As pointed out by the FDIC, Defendants do not plead to any affirmative misconduct on the part of the FDIC-Receiver. See *United States v. Simmons*, 1986 WL 12303, at *3 (N.D. Ill. Oct. 23, 1986) (striking equitable estoppel defense because defendant did not sufficiently allege affirmative misconduct). However, the analysis required in this instance requires the Court, at least partially, to determine the reach of *O'Melveny* and therefore, as with affirmative defenses 4 and 5, the Court denies without prejudice the FDIC's motion to strike.

       3.    *Affirmative defense 8*

In their eighth affirmative defense, Defendants claim that this Court should set-off from any damages award the amount of indemnification allegedly owed to them under Wheatland's bylaws. The FDIC counters that the Court does not have subject matter jurisdiction to entertain Defendants' set-off claim because (1) the set-off claim is in reality a counterclaim seeking indemnification from the failed bank's assets and (2) all Defendants except Sundry failed to exhaust their administrative remedies under FIRREA. The FDIC does not challenge Sundry's set-off affirmative defense. Defendants do not dispute that, with the exception of Sundry, they have not pursued the administrative remedies outlined in 12 U.S.C. § 1821(d)(13)(D).

FIRREA expressly limits a district court's jurisdiction to review claims against a failed institution. Congress enacted an administrative-claims process in 12 U.S.C. § 1821(d)(3) to (13) and provided in § 1821(d)(13)(D) that courts could not hear claims that bypassed the process. Under the administrative process, the FDIC as receiver provides statutory notification to creditors and potential claimants of the requirement to submit administrative claims and the "claims-bar date" by which they must do so. Claims must be submitted by the claims-bar date,

which occurs no less than 90 days from the date of the notices and in this case occurred on July 28, 2010. Id. § 1821(d)(3)(B)(i). Only claims that are properly exhausted can be filed in court. 12 U.S.C. § 1821(d)(6)(A). While in the past the Seventh Circuit has referred to "[c]ompliance with the FIRREA process [as] a strict jurisdictional prerequisite" (*Maher v. Harris Trust & Sav. Bank,* 75 F.3d 1182, 1190 (7th Cir.1996)), the court recently characterized FIRREA's rules for claims submission as "claims processing rules." *Campbell v. F.D.I.C.*, 676 F.3d 615, 618 (7th Cir. 2012). The rule operates both as to claims arising from the failed institution's alleged conduct as well claims targeting the alleged conduct of the receiver after its appointment. *McCarthy v. FDIC*, 348 F.3d 1075, 1079-80 (9th Cir. 2003) (collecting cases); see also *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 385-86 (6th Cir. 2008) (collecting cases). And the rule applies equally to claims for damages and equitable relief, including claims for rescission and declaratory relief. *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 714-15 & n.12 (8th Cir. 1996); *Freeman v. FDIC*, 56 F.3d 1394, 1400-02 (D.C. Cir. 1995).

The FDIC contends that Defendants' eighth affirmative defense is a defense in name only, and rather "is clearly a claim against the assets of the failed institution rather than a defense which attacks [plaintiff's] legal right to bring the action." *American First Federal, Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264-65 (11th Cir. 1999). The majority of cases support the FDIC's position that Defendants' purported set-off defense is in reality a counterclaim seeking indemnification from the failed bank's assets. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.,* 28 F.3d 376, 394 (3d Cir. 1994); see also *American First Federal, Inc.,* 198 F.3d at 1265 ("Lake Forest's claim for damages stemming from Professional's refusal to fund the balance of the construction loan is clearly a claim against the assets of the failed institution rather than a defense which attacks AFF's legal right to bring the action."); *Resolution Trust*

*Corp. v. Midwest Fed. Savings Bank of Minot,* 36 F.3d 785, 790–91 (9th Cir. 1994); *Multibank 2009-1 RES-ADC Venture, LLC v. PineCrest at Neskowin, LLC*, 857 F. Supp. 2d 1072, 1077 (D. Or. 2012). In turn, Defendants merely argue that FIRREA's administrative remedy exhaustion requirement does not apply to affirmative defenses. However, the labeling of the claim as an affirmative defense is immaterial: what matters is whether Defendants are asserting a "claim against the assets of the failed institution rather than a defense which attacks [plaintiff's] legal right to bring the action." See also *Youngblood*, 807 F. Supp. at 768-69, 770-71 ("these affirmative defenses are in reality claims against the assets of the failed financial institution and therefore come under the language of 12 U.S.C. § 1821(d)(13)(D), which removes such claims from the jurisdiction of the court until such time as the administrative claims process has been completed"). Here, Defendants' set-off "affirmative defense" has all the hallmarks of a counterclaim seeking indemnification from the failed bank's assets. See also *McCarthy v. FDIC*, 348 F.3d 1075, 1079 (9th Cir. 2003) (concluding that the FIRREA bar applied to a debtor's claim for an "offset" against the balance owed on his loan from the failed bank based on breach of fiduciary duty because the offset would diminish the bank's assets).

Defendants further argue that compliance with FIRREA's administrative remedies provision would lead to "patently absurd consequences" like requiring Defendants to file claims before having notice of the present suit and its potential claims. However, in this case, by the time that the FDIC-Receiver took over the Bank, Wheatland already had filed suit against Defendants Sykes and Sundry for alleged breaches of fiduciary duty, fraud, negligence, conspiracy, and deceptive trade practices. See *Wheatland Bank v. Michael A. Sykes, et al.*, Case No. 09-L-15546 (upon removal, Case No. 1:10-cv-04687). Upon receivership, FDIC-Receiver substituted for Wheatland Bank in a shareholder derivative suit filed just after the Bank closed

by Defendant Sykes against Defendants Spangler, Defendants Beles, and Wheatland as a nominal defendant. See *Michael A. Sykes v. L. Mark Spangler, et al.,* Case No. 10-L-5634 (upon removal, Case No. 1:10-cv-04288). Defendants had notice of that suit and undoubtedly were aware that the FDIC could pursue additional claims against the former directors and officers arising out of the failure of the Bank. Furthermore, if Defendant Sundry could follow the administrative claims procedure and then file his own suit for indemnification against the FDIC-Receiver (see *Sundry v. FDI*C, 1:10-cv-06749 (N.D. Ill.) (J. Zagel)), the other Defendants could have as well.

Moreover, Defendants did not file a late administrative claim for indemnification even after the filing of the amended complaint. As noted in *FDIC v. Scott*, 125 F.3d 254 (5th Cir. 1997), the FDIC has an internal procedure for allowing claimants to file claims that arise after the bar date. *Id.* (citing *Heno v. FDIC*, 20 F.3d 1204, 1210-14 (1st Cir. 1994)). Defendants have failed to comply with the statutory claims procedure and therefore the Court strikes without prejudice the eighth affirmative defense as to all Defendants except Sundry.

**III.  Conclusion**

For these reasons, the Court denies in part and grants in part Plaintiff's motion to strike [132]. The Court's ruling is without prejudice to either side raising these issues at the conclusion of discovery.

Dated:  November 15, 2012                                 _____
                                                                                    Robert M. Dow, Jr.
                                                                                    United States District Judge

14